UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ANNA MOHR-LERCARA, individually and on :
behalf of all others similarly situated,
                                        :
                            Plaintiff,
                                        :
v.                                              **OPINION AND ORDER**
                                        :
                                                18 CV 1427 (VB)
OXFORD HEALTH INSURANCE, INC.;          :
OPTUM, INC.; and OPTUMRX, INC.,
                                        :
                            Defendants.
                                        :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Anna Mohr-Lercara brings this putative class action against defendants Oxford

Health Insurance, Inc. ("Oxford"); Optum, Inc. ("Optum"); and OptumRx, Inc. ("OptumRx"),

alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.

§ 1001 et seq., and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1961 et seq.

Plaintiff alleges defendants "engaged in a scheme to defraud patients by overcharging

patients for the cost of medically necessary prescription drugs" covered by health insurance

plans defendants provided, administered, or managed. (Am. Compl. ¶ 4). She pleads claims on

behalf of a putative nationwide class and a putative subclass comprising class members with

health insurance plans to which ERISA applies.

Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule

12(b)(6). (Doc. #50).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 18 U.S.C. § 1331.

# BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and its exhibits and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges she received health insurance through group health insurance plans that Oxford provided and administered (the "plans"). Plaintiff claims Oxford administered the plans through its agents Optum and OptumRx, which served as Oxford's pharmacy benefit managers ("PBMs"). (See Am. Compl. ¶ 47). In that role, Optum and OptumRx were responsible for managing Oxford's network of participating pharmacies; "working with" Oxford "to set and dictate" plan members' "copayment amounts, coinsurance amounts, and deductibles (if applicable) to pharmacies"; processing claims for prescription drugs; and "interfacing with patients and pharmacies regarding applicable prescription drug coverage." (Id. ¶ 3).

## I. The "Overcharging Scheme"

According to the amended complaint, when an insured patient submits a prescription to be filled at a participating pharmacy, a pharmacist submits an electronic request to the patient's PBM that includes "key information such as the patient's name, drug dispensed and quantity dispensed." (Am. Compl. ¶ 41). In turn, the PBM is supposed to process the patient's prescription request in accordance with the patient's health insurance plan. The PBM then sends the pharmacy an electronic reply stating whether the patient and drug are covered and, if so, how much the patient must pay the pharmacy out of pocket—i.e., a copayment, coinsurance, or amount credited toward the patient's deductible—before the pharmacy hands over the drug. These communications allegedly occur "instantaneously." (Id.).

Plaintiff refers to patients' out-of-pocket payments for covered prescription drugs as "cost-sharing amounts." Pharmacies allegedly have "no role" in deciding cost-sharing amounts or how much patients must pay for prescriptions covered by insurance; rather, plaintiff asserts defendants "exercise ongoing discretionary control as they dictate" those figures to participating pharmacies. (Am. Compl. ¶ 48).

Plaintiff claims defendants violated the terms of her insurance plans by directing pharmacies to charge her inflated cost-sharing amounts for covered prescription drugs. Specifically, she asserts that under the terms of her plans, participating pharmacies should have charged her cost-sharing amounts less than or equal to what defendants actually paid the pharmacies for the drugs. But instead, defendants allegedly directed pharmacies to charge plaintiff more than the drugs actually cost. At first, the pharmacies pocketed the difference—a vig plaintiff calls the "spread." Then, at an unspecified time, defendants allegedly began to "claw back" the spread from pharmacies and keep that extra money for themselves.

An example illustrates the alleged scheme. Plaintiff alleges she submitted to a participating pharmacy a prescription for a drug for which defendants, as plaintiff's insurer, had agreed to pay the pharmacy $4.19. Under the terms of her plans, her out-of-pocket payment for that drug should not have exceeded $4.19. However, plaintiff claims defendants directed her pharmacy to charge a $15 copay, and then clawed back from the pharmacy $10.81 in profit. (See Am. Compl. ¶ 8). Other than the amount of the copay, plaintiff allegedly was not given any information about pricing. Thus, plaintiff claims she was improperly charged more than 250% of the drug's actual cost. Plaintiff says the drug would have been cheaper had she purchased it without insurance.

Plaintiff alleges defendants kept these overcharges secret. She claims defendants' contracts with in-network pharmacies contain confidentiality provisions prohibiting pharmacies from disclosing "the existence of the Overcharges or Clawbacks" and forbidding pharmacies from divulging that defendants required patients "to pay more for a prescription drug than if the patient did not have any insurance at all." (Am. Compl. ¶ 14). To this end, Optum's contracts with pharmacies allegedly state "that pharmacies 'shall collect the full Cost-Sharing Amounts'" from patients; require that pharmacies "must charge" patients the cost-sharing amounts submitted to them by the PBM; and "strictly prohibit[]" pharmacies from waiving any portion of a cost-sharing amount—an act Optum "considered a material breach" of the pharmacies' contractual obligations. (Id. ¶ 70(b)). The contracts also purportedly deem "confidential and proprietary" Optum's "reimbursement pricing information" and the prices Optum pays pharmacies for prescription drugs. (Id. ¶ 70(c)). A pharmacy determined by Optum to have disclosed confidential information allegedly faces contractual "penalties or sanctions." (Id. ¶ 70(d)).

Plaintiff claims defendants breached their fiduciary duties under ERISA when they executed the alleged overcharging scheme. In this regard, plaintiff alleges defendants both had and exercised discretionary authority or control over the plans, the plans' assets, and the plans' activities.

Defendants allegedly had such authority or control "in that they operated and controlled" plan members' prescription drug benefits. (Am. Compl. ¶ 99). And according to the amended complaint, defendants exercised that authority or control by, among other things, calculating inflated cost-sharing amounts and directing pharmacies to collect them; setting and collecting their own compensation in the form of clawbacks; using their electronic claim processing system

to intentionally set and charge excessive cost-sharing amounts; negotiating contracts with pharmacies that included confidentiality provisions backed by potential sanctions; and concealing the spread, overcharges, and clawbacks from patients.

Plaintiff also alleges defendants exercised fiduciary authority or control over plan assets. Plaintiff asserts those assets include contracts governing defendants' relationships with the plans; agreements governing Optum or OptumRx's PBM relationship with Oxford; and policies insuring the plan's medical and prescription drug expenses. Lastly, plaintiff asserts Oxford exercised fiduciary authority when it delegated responsibilities to Optum as PBM, and that Oxford thereby assumed a duty to monitor Optum's performance in that role.

II.    In re: UnitedHealth

Before commencing this action, plaintiff unsuccessfully pursued her claims against defendants in the United States District Court for the District of Minnesota, in In re UnitedHealth Group PBM Litigation, No. 16-CV-3352 (D. Minn.). There, plaintiff and several others sued the instant defendants and their parent company UnitedHealth Group, Inc. ("UnitedHealth"), among others, alleging Oxford, Optum, OptumRx, and their corporate relatives committed, among other things, the same ERISA and RICO violations alleged in the present case.

In December 2017, the District of Minnesota dismissed plaintiff's allegations for failure to state a claim. See generally In re: UnitedHealth Grp. PBM Litig., 2017 WL 6512222 (D. Minn. Dec. 19, 2017) (hereinafter "UnitedHealth"). The court held that plaintiff's claim under Section 502(a)(1)(B) of ERISA—Count I in the instant case—is subject to the requirement that plaintiff exhaust administrative remedies by submitting a grievance to defendants in accordance with the plans before filing suit. See id. at *6–7. The court further held that exceptions to the administrative exhaustion requirement did not obtain. See id. at *7–8. Finding that plaintiff had

not submitted a grievance respecting her Section 502(a)(1)(B) claim, the court dismissed that claim on exhaustion grounds without prejudice to refiling.  See id. at *17.

The court further held that plaintiff had not adequately pleaded any defendant acted as a plan fiduciary when engaging in the conduct plaintiff alleged.  See UnitedHealth, 2017 WL 6512222, at *8–12.  For this and other reasons, the court dismissed without prejudice plaintiff's ERISA claims for breach of fiduciary duty and prohibited transactions.  See id.

Lastly, the UnitedHealth court dismissed plaintiff's RICO claims without prejudice, finding that plaintiff failed adequately to plead the existence of a RICO enterprise. UnitedHealth, 2017 WL 6512222, at *13.

III.     Administrative Exhaustion

On April 26, 2018, plaintiff submitted a grievance to defendants regarding the alleged overcharging scheme.  (Am. Compl. ¶ 157; see Doc. #55 ("Raabe Decl.") Ex. A).  OptumRx denied the grievance twenty-nine days after receiving it, by letter dated May 25, 2018.  (See Raabe Decl. Ex. B).

Plaintiff concedes she did not see the grievance appeal process through to completion. However, she claims defendants failed to timely respond to the grievance, rendering the appeal process exhausted as a matter of law.

IV.     Claims and Relief Sought

Counts I through VI of the amended complaint allege ERISA violations.  Count I claims defendants violated the plans' terms when they allegedly instructed pharmacies to charge plaintiff excessive cost-sharing amounts and then kept the resulting spreads for themselves. Count II alleges defendants allowed and received unreasonable compensation and misused the plans' assets.  Count III alleges defendants breached their fiduciary duties by dealing in their

own interest or on behalf of a party adverse to plaintiff's interests as defendants' insured. Count IV alleges defendants failed to act prudently, solely in plan beneficiaries' interests, and in accordance with plan documents. Count V alleges each defendant failed to remedy, knowingly participated in, and enabled another plan fiduciary's breach of its fiduciary duties. And Count VI asserts defendants knowingly participated in or profited from a plan fiduciary's breach or prohibited transaction.

Counts VII through IX allege RICO violations. In Counts VII and VIII, plaintiff claims Oxford and Optum, respectively, took part in a racketeering scheme to fraudulently overcharge plan beneficiaries for medically necessary prescription drugs. Count IX alleges all defendants conspired to engage in such a scheme.

Plaintiff seeks damages, disgorgement, costs, fees, and declaratory and injunctive relief.

## DISCUSSION

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S. Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, a complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.    Issue Preclusion

Defendants argue the Court should dismiss plaintiff's ERISA claims under the doctrine of collateral estoppel in light of the district court's dismissal of plaintiff's ERISA claims in UnitedHealth.

The Court agrees in part.  Collateral estoppel bars several of plaintiff's arguments concerning administrative exhaustion and defendants' alleged fiduciary status.  However, it does not entirely defeat plaintiff's ERISA claims.

The doctrine of collateral estoppel—also known as issue preclusion—bars successive litigation of an issue of fact or law actually litigated and resolved in a prior judgment, even if the issue recurs in the context of a different claim.  Taylor v. Sturgell, 553 U.S. 880, 892 (2008). "[A] single judgment can preclude further litigation of particular issues, while still permitting further litigation on other issues and the underlying claim itself."  Garcia-Goyco v. Law Envtl. Consultants, Inc., 428 F.3d 14, 19 (1st Cir. 2005) (citing 18A Wright & Miller, Federal Practice and Procedure § 4435, at 134 (2d ed. 2002)).  By precluding parties from contesting issues they have had a full and fair opportunity to litigate, the doctrine protects against repetitious lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.  Montana v. United States, 440 U.S. 147, 153–54 (1979).  "The idea is straightforward:  Once a court has decided an issue, it is 'forever settled as between the parties.'"

B&B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. 1293, 1302 (2015) (quoting Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525 (1931)).

Under federal law, a party is collaterally estopped from relitigating an issue if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."  Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotation marks and citations omitted); see also Dundon v. Komansky, 15 F. App'x 27, 29 (2d Cir. 2001) (summary order).  A court imposing collateral estoppel also "must satisfy itself that application of the doctrine is fair."  Bear, Stearns & Co. v. 1109580 Ont., Inc., 409 F.3d 87, 91 (2d Cir. 2005) (citations omitted).

"The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues[,] . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issues."  Constantine v. Teachers Coll., 448 F. App'x 92, 93–94 (2d Cir. 2011) (summary order) (quoting Evans v. Ottimo, 469 F.3d 278, 281–82 (2d Cir. 2006)).  "[A]n adjudicator is generally accorded 'broad discretion' in determining whether or not collateral estoppel should apply in a given case."  Bear, Stearns & Co. v. 1109580 Ont., Inc., 409 F.3d at 91–92 (citations omitted).

The Court first addresses whether UnitedHealth precludes plaintiff's arguments respecting administrative exhaustion, and then considers whether plaintiff's arguments supporting her fiduciary claims are precluded.

A.     Exhaustion

Collateral estoppel bars plaintiff from rearguing that she need not exhaust administrative

remedies with respect to Count I.  Her argument that exhausting those remedies would be futile

is also precluded.

First, the UnitedHealth court squarely held, based on the language of plaintiff's plans,

that exhaustion is required.  See UnitedHealth, 2017 WL 6512222, at *6–7.  That holding

definitively resolves that Count I is subject to an exhaustion requirement.  A "dismissal for

failure to satisfy a precondition to suit should not bar a subsequent suit in which the defect has

been cured"; but a plaintiff cannot fail to remedy the defect, refile the action in front of a new

judge, and argue anew that the precondition should not apply.  See In re Sonus Networks, Inc.,

Shareholder Derivative Litig., 499 F.3d 47, 61 (1st Cir. 2007) (collecting authorities).

Second, as to futility, plaintiff points to three paragraphs of the instant amended

complaint that were not before the court in UnitedHealth.  (See Pl. Opp. Br. at 14 (citing Am.

Compl. ¶¶ 161–63)).[1]  In relevant part, those paragraphs describe as "not remotely credible" "the

notion that Defendants would disclose their massive fraudulent Overcharge and Clawback

scheme in response to an administrative claim by a single patient."  (Id. ¶ 163).

That allegation merely parrots an argument made and rejected in UnitedHealth.  There,

noting that "'[u]nsupported and speculative' claims of futility do not excuse a claimant's failure

to exhaust his or her administrative remedies," UnitedHealth, 2017 WL 6512222, at *7 (quoting

Midgett v. Wash. Grp. Int'l Long Term Disability Plan, 561 F.3d 887, 898 (8th Cir. 2009)), the

court found it "far from certain that . . . Defendants would have denied or failed to respond to

---

[1]     Plaintiff also points to paragraph 164.  As plaintiff is surely aware, she pleaded that
paragraph nearly verbatim in UnitedHealth.  (Compare Am. Compl. ¶ 164 with Grant Decl. Ex.
7, Doc. #52-1 at 945 ¶ 200).  Citations to Document #52-1 reference page numbers assigned by
the Court's Electronic Case Filing system.

[plaintiff's] claims, grievances, or complaints," id. (collecting cases). The court found that plaintiff "fail[ed] to meet [her] burden of showing futility" and dismissed Count I "for failure to exhaust administrative remedies." Id. at *8.

Because the UnitedHealth court rejected the identical futility argument plaintiff hawks in the instant case, the Court declines to accept that argument here.

B.    Fiduciary Status

UnitedHealth precludes several, but not all, of plaintiff's arguments that defendants acted as plan fiduciaries.

Plaintiff claims defendants acted in a fiduciary capacity in their dealings with pharmacies by, among other things, requiring pharmacies to (i) "remit some or all of the Overcharges to Defendants as Clawbacks" (Am. Compl. ¶ 100(d)), and (ii) "misrepresent to patients the proper cost-sharing amounts" (id. ¶ 100(h)); and by preventing pharmacies from disclosing to patients (i) "the proper cost-sharing amounts and the manner in which [pharmacies] charged for prescription drugs" (id.), (ii) "the existence or amount of the Overcharges" (id. ¶ 100(i)), and (iii) that patients "could purchase drugs at a price lower than the amount set by Defendants by not using their insurance or prescription benefits" (id. ¶ 100(j)).

The UnitedHealth court rejected each of these arguments: it held defendants "did not act as fiduciaries," UnitedHealth, 2017 WL 6512222, at *10, when they "required pharmacies to remit the spread," "prohibited pharmacies from disclosing to patients the discounted rates or to sell at those rates," and "negotiated the discounted rates" with pharmacies, id. at *8. The court further held that "Defendants' choice to negotiate contractual terms requiring pharmacies to keep rates confidential was also not a fiduciary function." Id. at *10.

Plaintiff offers no meaningful reason why the above-listed allegations in the instant case are not identical to the allegations rejected by the court in UnitedHealth. (Cf. Pl. Opp. Br. at 2–3 (alluding to "numerous new alleged material facts and legal theories," with no further explanation)). The Court finds none. Moreover, the UnitedHealth court did not dispose of those allegations in dicta or in another manner not necessary to its valid and final judgment on the merits of plaintiff's claims.[2] To the contrary, that court dismissed the claims labelled here as Counts II through VI because "Defendants did not act as fiduciaries when engaging in the complained-of conduct or, if they did, Plaintiffs have not plausibly alleged how such conduct constitutes a breach of any fiduciary duties." UnitedHealth, 2017 WL 6512222, at *11; see id. ("Plaintiffs' prohibited transaction claims fail for the same reasons that their fiduciary duty claims fail."); id. at *12 (dismissing plaintiffs' claims arising from "underlying breaches of fiduciary duty or prohibited transactions" because "the Court dismisses the underlying fiduciary duty and prohibited transaction claims"). Plaintiff does not dispute that she had a full and fair

---

[2]     The UnitedHealth court's dismissal of plaintiff's fiduciary claims supported a valid and final judgment on the merits notwithstanding that the Court dismissed those claims without prejudice. Cf. Saylor v. Lindsley, 391 F.2d 965, 968 (2d Cir. 1968) ("The requirement that a judgment, to be res judicata, must be rendered 'on the merits' guarantees to every plaintiff the right once to be heard on the substance of his claim."); see also id. (using the term "res judicata" to refer to both claim preclusion and issue preclusion).

    In arguing a dismissal without prejudice categorically lacks preclusive effect, plaintiff cites Second Circuit cases discussing claim preclusion, not issue preclusion. See, e.g., Elfenbein v. Gulf & W. Indus., Inc., 590 F.2d 445, 449 (2d Cir. 1978) ("[A] dismissal without prejudice permits a new action . . . without regard to [r]es judicata principles." (emphasis added) (citation omitted)), abrogated on other grounds by Espinoza ex rel. JPMorgan Chase & Co. v. Dimon, 797 F.3d 229 (2d Cir. 2015); accord Camarano v. Irvin, 98 F.3d 44, 47 (2d Cir. 1996) ("It is well established that a dismissal without prejudice has no res judicata effect on a subsequent claim." (emphasis added) (citations omitted)); Raine v. Paramount Pictures Corp., 1998 WL 655545, at *7–9 (S.D.N.Y. Sept. 24, 1998); Hannon v. U.S. Postal Serv., 701 F. Supp. 386, 387–88 (E.D.N.Y. 1988).

opportunity to litigate those issues in the District of Minnesota. Lastly, fairness considerations weigh in favor of applying collateral estoppel to the issues listed above.

Accordingly, plaintiff is collaterally estopped from arguing defendants acted as plan fiduciaries when they allegedly required pharmacies to remit overcharges to defendants and to misrepresent patients' proper cost-sharing amounts, and when defendants allegedly prevented pharmacies from disclosing proper cost-sharing amounts, the existence of the overcharges, "the manner in which [pharmacies] charged for prescription drugs," or that patients could save money by buying covered prescription drugs without using their insurance. (Am. Compl. ¶ 100(h)). Because plaintiff has not pleaded facts materially altering those allegations recycled from UnitedHealth, the UnitedHealth court's opinion "forever settled" the issues they raise "as between the parties" here. B&B Hardware, Inc. v. Hargis Indus., Inc., 135 S. Ct. at 1302 (quoting Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. at 525).

As to all other issues at bar, the Court either finds that plaintiff has pleaded new facts sufficient to render them not identical to the issues litigated in UnitedHealth, or need not address issue preclusion in light of the conclusions set forth below.

III.    Count I:  Exhaustion

Noting plaintiff failed to appeal defendants' denial of her grievance, defendants argue the Court should either dismiss Count I for failure to exhaust administrative remedies or stay the action until plaintiff's administrative remedies are fully exhausted.

The Court disagrees.

Failure to exhaust administrative remedies under ERISA is an affirmative defense. Paese v. Hartford Life & Acc. Ins. Co., 449 F.3d 435, 446 (2d Cir. 2006). As such, administrative exhaustion "must be pleaded and proved by a defendant," not the plaintiff, Kinsey v. Charitable

Leadership Found., 2012 WL 1014808, at *2 (N.D.N.Y. Mar. 23, 2012) (citations omitted), and warrants dismissal at the pleading stage only "if the defense appears on the face of the complaint," see Leak v. CIGNA Healthcare, 423 F. App'x 53, 53–54 (2d Cir. 2011) (summary order) (citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)).

Pursuant to ERISA, "a claimant shall be deemed to have exhausted" administrative remedies if an ERISA plan fails "to establish or follow claims procedures consistent with" ERISA's requirements. 28 C.F.R. § 2560.503-1(l)(1).

Assessing the amended complaint on its face, the Court cannot definitively conclude that plaintiff failed to exhaust administrative remedies with respect to Count I. Plaintiff alleges her grievance concerned a "pre-service claim" for prescription drug benefits. (Am. Compl. ¶ 155). The plans require defendants to respond in writing to a such a grievance within fifteen days of receiving it.[3] Defendants disagree, arguing the plans gave them thirty days to respond to plaintiff's grievance because, in fact, it concerned a "post-service claim." (Def. Br. at 15 (citing 29 C.F.R. § 2560.503-1(m)(2) (defining a "pre-service claim")). Defendants responded to the grievance twenty-nine days after it was received.

The Court finds plausible plaintiff's assertion that the claims she grieved qualify as "pre-service" because they requested defendants' approval of "a service or treatment"—namely, plaintiff's prescription drugs—that plaintiff had not yet received when her pharmacy electronically submitted the claims. (See Am. Compl. ¶ 155). At this procedural stage, the Court therefore draws in plaintiff's favor the reasonable inference that her grievance concerned a pre-service claim to which defendants had fifteen days, not thirty, to respond.

---

[3]     Each of plaintiff's plans contains such language. (See Grant Decl. Ex. 1, Doc. #52-1 at 50 (2011 plan); Ex. 2, id. at 192 (2012 plan); Ex. 3., id. at 337 (2013 plan); Ex. 4, id. at 523 (2014 plan); Ex. 5, id. at 677 (2015 plan); Ex. 6, id. at 825 (2016 plan)).

Accordingly, the Court declines to dismiss Count I for failure to exhaust administrative remedies. Defendants may renew their exhaustion defense at summary judgment.

IV.     Counts II through V:  Fiduciary Status

Defendants argue Counts II through V should be dismissed for failure adequately to plead defendants acted as fiduciaries of the plans.

A.     Compensation

Defendants argue plaintiff fails adequately to plead defendants acted as fiduciaries by setting and collecting their own compensation in the form of the clawbacks.

The Court disagrees.

An entity can "become a fiduciary with respect to particular contract terms, such as the terms of its own compensation, if the terms grant it discretionary authority or control." Hannan v. Hartford Fin. Servs., Inc., 688 F. App'x 85, 89 (2d Cir. 2017) (summary order) (citing F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1259 (2d Cir. 1987)).  For example, a party acts as a fiduciary with respect to its compensation when conferred "discretionary control over factors, such as the processing of insurance claims, that affect the actual amount of its compensation." Id. (citing F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d at 1259).  A plaintiff may adequately plead this form of fiduciary status by plausibly alleging a "post-contract exercise of discretionary control." See id.

The amended complaint alleges defendants exercised discretionary control over the processing of insured patients' claims for prescription benefits, and that defendants' compensation in the form of clawbacks is directly affected by the manner in which defendants process patients' claims.  The conduct the amended complaint describes is "post-contract":  it occurred after defendants contracted to participate in managing or administering the plans.

15

Hannan v. Hartford Fin. Servs., Inc., 688 F. App'x at 89 (citing F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d at 1259).

Accordingly, assuming plaintiff's allegations are true and drawing every reasonable inference in her favor, the Court finds plausible plaintiff's allegation that defendants acted as fiduciaries with respect to their compensation.

B.     Plan Assets

Plaintiff also adequately alleges defendants exercised fiduciary authority or control over plan assets.

Courts have considered insurance policies or contracts to be plan assets under ERISA. See Negron v. Cigna Health & Life Ins., 300 F. Supp. 3d 341, 358 (D. Conn. 2018) (citing Fechter v. Conn. Gen. Life Ins. Co., 800 F. Supp. 182, 199–200 (E.D. Pa. 1992)).  Drawing all reasonable inferences in plaintiff's favor at this stage, the Court assumes that is the case here.

Defendants argue the amended complaint "does nothing to explain exactly how Defendants used the existing contracts to their own advantage."  (Defs. Br. at 20).  Not so: plaintiff alleges defendants abused authority conferred by "the insurance policies, ASO contracts, and PBM agreements" when they instructed pharmacies to charge patients inflated cost-sharing amounts, allegedly in violation of the plans' terms.  (See Am. Compl. ¶ 102).[4]  This assertion that defendants "used the agreements to institute the Spread and Clawbacks" suffices

---

[4]     Setting reimbursement rates and policies is not a fiduciary act.  See Doe v. United Health Grp., Inc., 2018 WL 3998022, at *4 (E.D.N.Y. Aug. 20, 2018) (citing Janese v. Fay, 692 F.3d 221, 227 (2d Cir. 2012)) (further citation omitted); see also In re Express Scripts/Anthem ERISA Litig., 285 F. Supp. 3d 655, 682 (S.D.N.Y. 2018) (citing Am. Psychiatric Ass'n v. Anthem Health Plans, 50 F. Supp. 3d 157, 169 (D. Conn. 2014), aff'd on other grounds, 821 F.3d 352 (2d Cir. 2016)), appeal docketed, No. 18-346 (2d Cir. Feb. 5, 2018).  Here, plaintiff alleges not that defendants set rates at which patients or providers should be charged under the plans, but rather that they exceeded them.

plausibly to allege defendants acted as fiduciaries with respect to plan assets. See Negron v. Cigna Health & Life Ins., 300 F. Supp. at 358–59.[5]

Thus, the Court finds defendants plausibly acted as fiduciaries with respect to plan assets.

In sum, plaintiff adequately pleads defendants acted as plan fiduciaries with respect to their own compensation and plan assets.

The Court therefore denies dismissal of plaintiff's fiduciary claims.

V.     Counts II and III :  Prohibited Transactions

Defendants argue the Court should dismiss plaintiff's ERISA claims for prohibited transactions because the amended complaint does not plausibly allege defendants took, used, dealt with, or received plan assets.

As set forth above, plaintiff plausibly alleges defendants acted as fiduciaries with respect to plan assets.  Defendants having offered no other argument for dismissing the prohibited transaction claims, those claims survive dismissal.

VI.     Duplicative Claims

Defendants contend the Court should dismiss Counts II through VI as duplicative of Count I.

The Court is not persuaded.

Counts II through VI arise under ERISA Section 502(a)(3).  That statute empowers a fiduciary, beneficiary, or participant of an ERISA plan to bring a civil action for an injunction barring "any act or practice" that violates ERISA or the terms of the plan, or for any "other

_____

[5]     Defendants also urge that "wrongdoing in performing non-fiduciary services does not transform the alleged wrongdoer into a fiduciary."  (Defs. Reply Br. at 5 (quoting Allen v. Credit Suisse Secs. (USA) LLC, 895 F.3d 214 (2d Cir. 2018)).  This argument begs the question. Plaintiff plausibly alleges defendants performed fiduciary acts.

appropriate equitable relief" that (i) redresses such a violation, or (ii) "enforce[s] any provisions" of ERISA or the plan's terms. 29 U.S.C. § 1132(a)(3).

Section 502(a)(3) is a "'catchall' provision" that serves "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d 125, 134 (2d Cir. 2015) (quoting Varity Corp. v. Howe, 516 U.S. 489, 512 (1996)). Accordingly, if "it is not clear" at the pleading stage whether "monetary benefits under § 502(a)(1)(B) alone will provide [the plaintiff] a sufficient remedy," a district court should not dismiss a Section 502(a)(3) claim as duplicative on a motion to dismiss. Id.

Here, the amended complaint seeks both damages and equitable remedies, and the Court cannot readily discern on this undeveloped record whether the former will afford plaintiff adequate relief. See N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp., 798 F.3d at 134.

The Court therefore denies defendants' motion to dismiss plaintiff's Section 502(a)(3) claims as duplicative of her Section 502(a)(1)(B) claim.

VII.    Count VI:  Non-Fiduciary Liability

In Count VI, plaintiff claims defendants "had actual or constructive knowledge of and participated in and/or profited from the prohibited transactions and fiduciary breaches alleged in Counts II–V." (Am. Compl. ¶ 230). Consistent with the Court's analysis of Counts I through V, the Court finds plaintiff has adequately pleaded each defendant knowingly participated in another entity's breach of fiduciary duty owed to the plans. Thus, Count VI survives dismissal. See Negron v. Cigna Health & Life Ins., 300 F. Supp. 3d at 362 (citing Harris Trust Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 241 (2000)).

VIII.    Counts VII through IX:  RICO

Defendants argue the Court should dismiss plaintiff's civil RICO claims.

The Court agrees as to the substantive RICO claim against Oxford and the RICO conspiracy claim against OptumRx, but disagrees as to the substantive RICO claim against Optum and the RICO conspiracy claim against Oxford and Optum.

Counts VII and VIII allege Oxford and Optum, respectively, violated 18 U.S.C. § 1962(c).  That statute prohibits "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted). Count IX accuses all three defendants of RICO conspiracy.

The Court first considers whether plaintiff's RICO allegations satisfy Rule 9(b), and then takes up each RICO count in turn.

A.    Rule 9(b)

Defendants argue plaintiff fails to allege predicate acts of fraud with particularity, as required by Rule 9(b).

The Court disagrees.

Pursuant to Rule 9(b), mail and wire fraud typically "must be pled with particularity.  The complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  Williams v. Affinion Grp., LLC, 889 F.3d 116, 124–25 (2d Cir. 2018) (citations omitted).  However, in the civil RICO context, "the pleader need only allege that the mail and wire fraud were in furtherance of a larger scheme to defraud"; accordingly, "the communications themselves need not have contained false or misleading information."  Id. at 125 (quoting SKS Constructors, Inc. v. Drinkwine, 458 F. Supp. 2d 68, 78 (E.D.N.Y. 2006)).  Further, a civil RICO

defendant's <u>mens rea</u> "need not be alleged with great specificity." <u>Techno-Comp, Inc. v. Arcabascio</u>, 130 F. Supp. 3d 734, 741 (E.D.N.Y. 2015) (quoting <u>Wight v. BankAmerica Corp.</u>, 219 F.3d 79, 91 (2d Cir. 2000)).

The amended complaint easily satisfies this standard. Plaintiff's ninety-two-page amended complaint extensively describes the alleged overcharging scheme. Among other things, its sets forth in detail each defendant's role in the alleged scheme, accuses defendants of intentionally overcharging patients, and specifically identifies as examples sixteen discreet transactions in which plaintiff allegedly was overcharged for a covered prescription drug. (<u>See</u> Am. Compl. ¶ 65). Each such transaction allegedly involved "interstate wire[s]," which plaintiff describes in detail, through which defendants instructed pharmacies to charge patients inflated cost-sharing amounts in furtherance of defendants' purported scheme to defraud patients. (<u>See</u> <u>id</u>. ¶ 41).

In short, the amended complaint plainly offers "a detailed description of the underlying scheme" and sets forth connections linking that scheme to defendants' "wire communications." <u>See</u> <u>In re Sumitomo Copper Litig.</u>, 995 F. Supp. 451, 455–56 (S.D.N.Y. 1998).

Thus, the Court will not dismiss the RICO claims for failure to satisfy Rule 9(b).

B.    <u>Count VII:  Oxford</u>

In Count VII, plaintiff claims Oxford engaged in a RICO enterprise with Optum. Defendants correctly argue this count fails as a matter of law.

To adequately plead a RICO enterprise, a plaintiff must plausibly allege "the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise.'" <u>U1IT4Less v. Fedex Corp.</u>, 871 F.3d 199, 205 (2d Cir. 2017) (quoting <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 161 (2001)).  This "distinctness requirement" demands that the "person" and the "entity" be

more than "simply the same 'person' referred to by a different name." Id. (quoting Cedric Kushner Promotions, Ltd. v. King, 533 U.S. at 161). The requirement flows from the premise that RICO targets only joint activity and cannot render a corporation liable for "corrupting itself." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (citing Bennett v. U.S. Trust Co. of N.Y., 770 F.2d 308, 315 (2d Cir 1985)).

"[C]orporations that are legally separate but 'operate within a unified corporate structure' and 'guided by a single corporate consciousness'" are indistinct and thus "cannot be both the 'enterprise' and the 'person.'" Cruz v. FXDirectDealer, LLC, 720 F.3d at 121 (quoting Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir. 1996)). Likewise, a corporation cannot "be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated legal entities." U1IT4Less v. Fedex Corp., 871 F.3d at 205–06; cf. Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (collecting cases).

Thus, to adequately plead an enterprise, a plaintiff must allege "more than the defendant carrying out its ordinary business through a unified corporate structure unrelated to the racketeering activity." U1IT4Less v. Fedex Corp., 871 F.3d at 207. Applying this principal, the Second Circuit has held "that a subsidiary corporation cannot constitute the enterprise through which a defendant parent corporation conducts racketeering activity, at least in the absence of exceptional circumstances, such as a showing that the subsidiary was set up solely for the purpose of perpetrating a fraud." David B. Smith & Terrance G. Reed, Civil RICO ¶ 3.07(2)(a) (2018) (citing U1IT4Less, Inc. v. Fedex Corp., 871 F.3d at 207) (further citations omitted).

In Count VII, plaintiff paints Oxford as the "person" and Optum as the "enterprise." However, plaintiff explicitly alleges Optum "acted as [Oxford]'s agent or delegatee" at all

relevant times.  (Am. Compl. ¶ 40; see id. ¶¶ 47, 50, 51, 118(p)).  A corporate principal is not "distinct" from its agent acting within the scope of the agency relationship.  See U1IT4Less v. Fedex Corp., 871 F.3d at 205–06.  Nor does Optum's status as a legal entity separate from Oxford suffice to render Optum and Oxford distinct for RICO purposes.  See id.

The amended complaint also acknowledges Oxford and Optum are corporate siblings. (See Am. Compl. ¶¶ 32–33).  As noted above, the Second Circuit holds that separately incorporated entities "'acting within the scope of a single corporate structure' and 'guided by a single corporate consciousness'" are not RICO-distinct.  U1IT4Less v. Fedex Corp., 871 F.3d at 206 (citation omitted).  Although Second Circuit case law has primarily focused on enterprises comprising a corporate parent and one or more subsidiaries, the same principal obtains here, where plaintiff alleges all three defendants are UnitedHealth subsidiaries conducting "ordinary business through a unified corporate structure unrelated to the racketeering activity."  Id. at 207.

For all these reasons, plaintiff fails adequately to plead RICO's distinctness requirement with respect to Count VII.  The Court therefore dismisses plaintiff's substantive RICO claim against Oxford.

C.      Count VIII:  Optum

Defendants argue the Court should dismiss plaintiff's RICO claim against Optum for failure adequately to plead Optum directed the affairs of a RICO enterprise in which Optum participated.

The Court disagrees.

To adequately plead Optum violated 18 U.S.C. § 1962(c), plaintiff must plausibly allege Optum "participate[d] in the operation or management of" a RICO enterprise, Reves v. Ernst & Young, 507 U.S. 170, 185 (1993)—in other words, that Optum had "some part in directing the

enterprise's affairs," id. at 179.  The mere "existence of a business relationship between the defendants and the enterprise" does not satisfy this requirement.  In re SmithKline Beecham Clinical Labs., Inc. Lab. Test Billing Practices Litig., 108 F. Supp. 2d 84, 99 (D. Conn. 1999) (citing Goren v. New Vision Int'l, Inc., 156 F.3d 721 (7th Cir. 1998)).

"[E]specially at the pleading stage," the "'operation or management' test presents a 'relatively low hurdle for plaintiffs to clear.'"  D'Addario v. D'Addario, 901 F.3d 80, 103–04 (2d Cir. 2018) (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004)).  Indeed, "the question whether [a] defendant 'operated or managed' the affairs of an enterprise [is] essentially one of fact."  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d at 176 (citing United States v. Allen, 155 F.3d 35, 42–43 (2d Cir. 1998)).

Plaintiff alleges Optum controlled its in-network pharmacies by means of contracts that (i) required the pharmacies to charge and collect from patients cost-sharing amounts set by Optum; (ii) required the pharmacies to pay Optum the "spreads," in the form of the "clawbacks"; (iii) forbade the pharmacies from disclosing to patients prescription drug pricing information or the existence of the "spreads" or "clawbacks"; and (iv) rendered the pharmacies subject to sanctions for violating the contracts.  Elsewhere, plaintiff acknowledges these arrangements are common in the health insurance industry:  the amended complaint references a 2016 press release from the National Community Pharmacists Association that recognized copay clawbacks as "relatively common" among "certain PBMs," which "[s]ometimes" impose confidentiality provisions that "[m]ost pharmacists" reported encountering "at least 10 times during the past month."  (Am. Compl. ¶ 78 (citation omitted)).

Defendants argue Optum's contracts with pharmacies created nothing more than "garden-variety business relationships" set forth in commercial agreements that contained standard

confidentiality clauses and were negotiated by sophisticated parties at arms-length.  (Defs. Br. at 29).  They urge that Optum was engaging in its ordinary business when it contracted with pharmacies, not exercising "untoward 'control' over the pharmacies" in furtherance of a RICO scheme.  (Defs. Reply Br. at 9).

The Court is inclined to agree.

Nonetheless, recognizing that "a court may be unable to 'decide definitively'" at the pleading stage "that a defendant did not participate in the enterprise's affairs," Negron v. Cigna Health & Life Ins., 300 F. Supp. 3d at 363 (internal quotation marks and citation omitted)—and mindful that the "operation or management" question is "essentially one of fact," First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d at 176 (citing United States v. Allen, 155 F.3d at 42–43)—the Court denies dismissal at this early stage of the case.  See Negron v. Cigna Health & Life Ins., 300 F. Supp. 3d at 363–64 (declining to dismiss at the pleading stage a substantively similar RICO claim).

Accordingly, the Court declines to dismiss Count VIII.

D.     Count IX:  RICO Conspiracy

Plaintiff's surviving substantive RICO claim, Count VIII, involves Oxford, Optum, and Optum's in-network pharmacies; plaintiff does not allege OptumRx participated.  (See Am. Compl. ¶¶ 259–89).  Further, aside from labelling Count IX as asserted "Against All Defendants" (id. at 87), plaintiff's allegations in Count IX do not mention OptumRx in any respect.  (See id. ¶¶ 290–94).   Accordingly, plaintiff's RICO conspiracy claim against OptumRx, if any, fails as a matter of law.

Aside from attacking the validity of plaintiff's underlying RICO claims, defendants offer one other reason why the Court should dismiss the RICO conspiracy claim against Oxford and

Optum: they cast the claim as "lack[ing] any supporting facts" and therefore "insufficiently pled as a matter of law." (Defs. Br. at 30).

The Court disagrees.

"'[T]he requirements for RICO's conspiracy charges under § 1962(d) are less demanding' than those for substantive violations." City of New York v. Bello, 579 F. App'x 15, 17 (2d Cir. 2014) (summary order) (alteration in original) (quoting Baisch v. Gallina, 346 F.3d 366, 376 (2d Cir. 2003)). "In the civil context, a plaintiff must allege that the defendant knew about and agreed to facilitate the scheme." Id. (quoting Baisch v. Gallina, 346 F.3d at 376–77). "[T]he existence of a RICO enterprise" need not be pleaded. Id. (citing United States v. Applins, 637 F.3d 59, 75 (2d Cir. 2011)).

The amended complaint plausibly alleges Oxford and Optum knew of and agreed to facilitate an alleged scheme to overcharge insured patients. Indeed, plaintiff repeatedly alleges Oxford and Optum acted knowingly and intentionally to profit through overcharges levied at insured patients' expense. Assuming these allegations are true and drawing all reasonable inferences in plaintiff's favor, as the Court must at this stage, plaintiff adequately pleads Oxford and Optum knew of the purported overcharging scheme and agreed to facilitate it.

Accordingly, the RICO conspiracy claim is dismissed as to OptumRx, but shall proceed as to Oxford and Optum.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's substantive RICO claim against Oxford and RICO conspiracy claim against OptumRx are dismissed.

All other claims shall proceed.

However, collateral estoppel bars plaintiff from rearguing that defendants acted as plan fiduciaries when they required pharmacies to (i) remit overcharges to defendants, or (ii) misrepresent patients' proper cost-sharing amounts. Collateral estoppel also bars plaintiff from rearguing that defendants acted as plan fiduciaries when they prevented pharmacies from disclosing to patients (i) proper cost-sharing amounts, (ii) the existence of the overcharges, (iii) how pharmacies charged patients for covered prescription drugs, or (iv) that patients' covered prescription drugs could cost less if purchased without using insurance.

Finally, plaintiff is also precluded from rearguing that she need not exhaust administrative remedies, or that exhausting administrative remedies by appealing the denial of her grievance would be futile.

By April 10, 2019, defendants shall answer the amended complaint's surviving claims.

The Clerk is directed to terminate the motion (Doc. #50).

Dated: March 27, 2019
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge